LOTTINGER, Judge.
Gulfstates Finance Corporation, D/B/A E. J. Gonzales Finance Company, filed this suit on some fifty promissory notes secured by chattel mortgage which were signed by Airlines Auto Sales, Inc., and personally endorsed by H. V. Carter. The suit is for the sequestration of said vehicles and for a judgment in the sum of $39,950.00, with interest, attorney fees, and court costs. A reconventional demand was filed by the defendants in which they seek judgment against petitioner for damages for the alleged wrongful seizure and sale of said vehicles. The Lower Court awarded judgment in favor of defendant on its recon-ventional demand in the sum of $15,000.00, and dismissed the main action of petitioner. The petitioner has taken this appeal and the defendant has answered the appeal seeking an increase in quantum.
This suit has been before this Court before, at which time we refused to admit parol evidence of a verbal agreement to change the time of payment of the promissory notes, as per our report in 172 So. 2d 184. Subsequent thereto, the Supreme Court granted a writ of certiorari and reversed our judgment, thus allowing the defendant to show such an agreement by pa-rol evidence, the Supreme Court’s report being set forth in 248 La. 591, 181 So.2d 36. Subsequent to the Supreme Court’s decision the matter went back to the Trial Court for trial, accordingly, after which the Lower Court dismissed the main demand and granted the judgment in favor of defendant on its reconventional demand, as aforesaid.
In the conduct of its business, the petitioner floor-planned automobiles for defendant, as is represented by the some fifty promissory notes and chattel mortgages on said vehicles given by the defendant to the petitioner. These promissory notes are personally endorsed by Mr. H. V. Carter, the sole stockholder in the defendant corporation. Previous to the arrangement between the petitioner and the defendant, the defendant had floor-planned its stock of automobiles with Allen Parker Finance Company under a similar arrangement, which was supervised by Mr. T. G. McClel-land. Whén Mr. McClelland left Allen Parker Finance Company to go to work for petitioner, he secured the floor-plan agreement with the defendant for petitioner.
After a period of two or three years, during which the floor-plan agreement between the parties hereto had proved satisfactory to both parties, the petitioner decided to go out of the floor-plan business. Therefore, sometime around January of 1964, the representative of petitioner notified defendant that petitioner was discontinuing the floor-plan business and they *385 asked that defendant secure other floor-plan financing and that they pay off their notes as soon as possible. Subsequent to this, the defendant attempted to make floor-plan arrangements with other loan companies, however, they were evidently unsuccessful.
On April 28, 1964, the petitioner filed this suit, as a result of which, the automobiles were sequestered and sold. The defendant first attempted to dissolve the writ of sequestration, however, being unsuccessful, it then filed an answer and reconven-tional demand, alleging damages because of the breach of an alleged verbal contract by petitioner.
When this matter was previosuly before us, we were of the opinion that oral testimony would not be admissible to prove the verbal contract as to the time of payment of the notes. Although the notes are made payable on demand, the Supreme Court, by its said decision, has opened the matter for verbal testimony to show that the time of payment of these notes were not “upon demand” as therein specified.
The original floor-plan agreement between the petitioner and the defendant was to the effect that when a car was purchased by the defendant, the defendant would give petitioner a demand promissory note and chattel mortgage on the automobile, personally endorsed by Mr. Carter, and the petitioner would then pay the purchase price on the said automobile. After a period of 90 days, if the car had not been sold the defendant was required to make a ten percent payment on the note, and subsequent reductions each month, and no notes would be held by the petitioner for a period of over six months. In other words, if the vehicle was not sold within six months, the defendant was required to pay the note in full. At any time upon the sale of a vehicle, the note on that particular car would be paid off by the defendant. It was further established that it was customary in the trade that the finance company could terminate the agreement at any time, and that was why the notes were made payable on demand. As a matter of fact, either party could terminate the arrangement at will, just like when defendant left Allen Parker Finance Company.
This is evidently the customary arrangement in the trade as the evidence shows that both the petitioner and Allen Parker Finance Company used this system. Although Allen Parker Finance Company had defendant sign a written agreement to the effect, the evidence discloses that the arrangement between the parties to this suit was verbal.
Around the 24th of February, 1964, petitioner advised defendant that petitioner was going out of the floor-plan business and the financing of automobiles for dealers. Petitioner did agree, however, to continue to finance the some fifty cars defendant had on hand and which had aleady been floor-planned, and that petitioner would floor-plan any cars taken in by defendant as trade-ins on the sales of these fifty cars, provided that petitioner financed the vehicles sold. This arrangement was to continue as usual until the fifty cars on hand could be disposed of, except for purchasing new cars. A letter was also written to defendant, formally notifying defendant that petitioner was going out of the floor-plan business.
The defendant takes the position that the promissory notes were not payable until the vehicles were sold. They argue that if the vehicles were not sold, the notes would not be payable. It is inconceivable to this Court that any financing institution would enter into such a contract as is contended by defendant. It was the testimony of both Mr. McClelland and Mr. Bob Gonzales, the Secretary and Treasurer of petitioner company, that there was no agreement between his company and defendant to the effect that payment on the note would not be due until the automobile was sold. Both he and Mr. McClelland, as well as Mr. Joe B. Hubbard, who was the manager of Allen Parker *386 Finance Company, testified that it was customary in the trade that the finance company could terminate the agreement at any time, and that was why the notes were made payable on demand. They further testified that the company could have demanded payment of the said notes at any time.
Petitioner further claims that defendant violated its agreement in several respects, thus causing the petitioner to take action to protect its interest. Mr. McClelland testified that it was usual procedure for him to check each dealer about once a month to ascertain that none of the cars under the floor-plan had been sold. During the latter part of April, in making his usual inspection, Mr. McClelland noted that one of the cars upon which they held a chattel mortgage had been sold. The note on this vehicle was not paid to petitioner until after the filing of the present suit. This is only one of the violations of the oral agreement which the petitioner claims led to the seizure. Other reasons for the seizure, as testified by Mr. Gonzales, were that Mr. Carter was in the process of partially depleting his assets; that he had formed a new corporation at the same location and had transferred funds from the old company into the new company without petitioner’s knowledge or consent; that a federal tax lien had been filed against defendant, and signs notifying the public of such were posted on the premises, that a suit had been filed against petitioner by defendant regarding the reserves held by petitioner on behalf of defendant.
Considering the above, it certainly appears to this Court that the.petitioner was ■justified in terminating its arrangement with the defendant because of the reasons as testified to by Mr. Gonzales and Mr. McClelland. Petitioner had some $40,000.-00 invested in. this deal, and, of course, it ■ was incumbent upon petitioner to take such action as necessary to protect its investment, particularly in view of the developments indicating that the defendant was in financial difficulty.
For the reasons hereinabove assigned, the judgment of the Lower Court will be reversed and there will be judgment herein in favor of petitioner and against the defendants, Airline Auto Sales, Inc., and H. V. Carter, in solido, for the sum of $39,-950.00, with eight percent interest thereon from April 24, 1964, until paid, and for an additional sum of twenty-five percent of the principal and interest as attorney fees, and for all costs of this proceeding, less, however, a credit of $11,418.22, as of August 14, 1964, being the proceeds received from the sequestration claim. The recon-ventional demand filed by defendants against petitioner is hereby dismissed.
Judgment reversed and rendered.